The CITY OF COLUMBUS, Appellee,

v.

HOLLAND, Appellant.

[Cite as *Columbus v. Holland* (1991), 76 Ohio App.3d 196.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1424.

Decided Nov. 7, 1991.

*Ronald J. O'Brien*, City Attorney, *Marcee C. McCreary*, City Prosecutor, *Thomas K. Lindsey* and *Brenda J. Keltner*, for appellee.

*James Kura,* Franklin County Public Defender, and *John W. Keeling,* for appellant.

WHITESIDE, Judge.

Defendant, Wilma Holland, appeals from her conviction of driving without a valid license in violation of Columbus City Code Section 2135.01 following her plea of no contest, which she entered when her motion to suppress evidence obtained as a result of an unlawful arrest was overruled by the Franklin County Municipal Court. In support of her appeal, defendant raises a single assignment of error, as follows:

"The trial court erroneously overruled the defendant's motion to suppress when the city failed to establish that the defendant's vehicle had been lawfully stopped by the arresting officer."

The arresting officer testified that he had been dispatched to a White Castle restaurant on a complaint of a drunken driver. When he arrived at the scene, he noticed a police officer talking to the defendant. Although he was three feet from defendant, the arresting officer, a police sergeant, noticed nothing unusual about the defendant. However, as they walked away, the officer informed the police sergeant that he believed that defendant might be under the influence of alcohol.

About one-half hour later, as he was driving on a nearby street, the police sergeant observed a moving automobile which looked like the one defendant had been standing next to in the parking lot. The sergeant stopped the vehicle and discovered that defendant was the driver of the vehicle. At this point, the police sergeant made an evaluation of defendant's sobriety and determined that there was no probable cause to arrest her for driving under the influence. However, after placing defendant in the back seat of his cruiser, the sergeant ran a check through the LEADS computer and discovered that the defendant's license had been suspended. Defendant was then arrested for that violation, and her car was impounded. The sergeant stated that he did not observe defendant commit any violation, traffic or otherwise, and that he pulled her vehicle over (prior to the time he ascertained that defendant was in fact the operator) only because of the other officer's comments about defendant and because of his own "sixth sense" and intuition.

The basic issue before us is whether the police sergeant, when he stopped defendant's vehicle, had a sufficient reasonable basis for doing so. The city contends that the officer was entitled to make a so-called *Terry*-type stop for investigation predicated upon the information that he had, which

would give rise to an articulable and reasonable suspicion that defendant was operating the vehicle in violation of law.  See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.  The appropriate rule is set forth in *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237.  In that case, there was no question as to the reasonableness of the initial stop since the vehicle displayed neither front nor rear license plates.  However, the vehicle did have a temporary license tag, which was visible from the rear windshield.  After stopping the vehicle, the officer ascertained that the temporary tag was visible from the rear window and, thus, the vehicle was not being operated without a license plate.  Despite having made that determination, the officer proceeded to conduct a computer check and ascertained that the operator's driver's license has been suspended.  The officer then arrested the person for operating a motor vehicle while under suspension.  The Supreme Court reversed the conviction, finding that there was an improper search and seizure, the Supreme Court stating that, even where there is a valid basis for an initial stop of a vehicle, when that basis is explained away, " * * * the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable.  * * * " *Chatton*, at 63, 11 OBR at 254, 463 N.E.2d at 1241.

The evidence in this case is somewhat confusing as to time sequence.  The sergeant testified that, after stopping defendant's vehicle, he made an evaluation of sobriety and determined not to arrest her for driving under the influence of alcohol.  That evaluation "consisted of my looking into her eyes for the presence or absence of any redness, any odor of an alcoholic beverage upon her breath, any unsteadiness of feet as she walked from her car to my car, and any confusion or inconsistencies with regard to her answers to questions raised by me."  After making this determination, the officer caused her to sit in the back of the police cruiser while he checked the LEADS computer to determine her driver's license status.  While he testified that he did ask for her driver's license, it was unclear as to whether he asked for the driver's license before or after determining not to arrest her for operating the motor vehicle while under the influence of alcohol.  If he asked her for the driver's license after such determination, under the rule of *Chatton, supra,* the further inquiry would have been improper, and evidence obtained as a result thereof should be suppressed.

More basic, however, is the fact that the sergeant admitted that he had observed defendant violate no traffic laws and predicated the stop upon intuition and the comment of the officer at the White Castle parking lot that defendant might be under the influence.

The other police officer also testified at the hearing. He could not recall any conversation with the sergeant concerning defendant's condition. However, his testimony as to defendant's condition conflicted with that of the sergeant. The officer testified that, at the White Castle parking lot, the defendant was clearly drunk but was not operating the vehicle at that time. He told her not to drive the vehicle because she was drunk, and he left the scene. He stated that he smelled an odor of alcohol about defendant's person, that she staggered and was having a hard time walking, and had slurred speech and glassy eyes. He indicated that "her physical characteristics indicated to me she was definitely under the influence of alcohol and very drunk."

The other police officer's testimony as to his observation of defendant in the parking lot would give rise to a reasonable basis for his stopping her one-half hour later if he observed her operating that motor vehicle. However, the officer indicated that he could not recall communicating any of this information to the sergeant, and the sergeant testified that the officer told him only that defendant "might" be under the influence, which is inconsistent with the officer's testimony that he thought defendant was "very drunk." The salient issue, however, is that the stop cannot be predicated upon the other officer's observations or opinion, which were not communicated to the sergeant. Rather, it may be predicated only upon that which the sergeant knew at the time he stopped the vehicle and made the initial detention.

Giving the state the benefit of the most favorable interpretation of the sergeant's testimony, there is no reasonable basis for a stop of defendant's vehicle at the time that the officer stopped the vehicle. He admitted that, although the vehicle was the same vehicle he saw defendant standing next to, he did not know who was driving the vehicle until after he stopped it and observed that defendant was the driver. He further admitted that he saw no traffic violations committed while he observed the automobile being driven. Rather, he justified that he predicated his stop upon "very intricate and broad knowledge of the street." He stated that he surmised from his "sixth sense" that whoever was driving the vehicle "really doesn't want to have any contact with me." As the result of "the kind of intuition that you won't find in a law book," he further admitted that he identified the vehicle as being the one he had seen earlier, not from observing that defendant was the operator of that vehicle and not from the license number, but only from its color, size, and general appearance. He further admitted that "theoretically under probability, it could have been another green car."

Under these circumstances, the officer had insufficient evidence upon which to predicate a stop. He had no reasonable basis for suspecting that a traffic

law was being violated. Nor did he even contend that he had a basis for suspecting that the operator of a vehicle was violating some law. In short, the officer stopped the vehicle based primarily upon his intuition. Such intuition is insufficient information upon which to predicate a traffic stop predicated at best solely upon a hunch that the operator of the vehicle may be violating a traffic law.

The trial court, in overruling the motion to suppress, obviously relied upon the other officer's testimony as to defendant's condition. The court stated the correct test, that an officer in effecting an investigative stop must have a reasonable suspicion based on objective facts that the operator of the vehicle involved is engaged in some type of prohibited activity. In addition, the trial court was under the misapprehension that the sergeant personally saw defendant operating the vehicle prior to the stop. The officer's testimony was that he did not know defendant was operating the vehicle until after he stopped it, but did suspect that it was the same vehicle, although there was a "theoretical probability" otherwise. In addition, the sergeant's testimony was unclear as to when he asked for defendant's driver's license since he testified that it was immediately prior to his placing her in the back seat of his cruiser, but also indicated that he made a determination to the effect that she was not under the influence of alcohol prior to placing her in the cruiser. In any event, the evidence permits a conclusion only that the sergeant did not have sufficient facts to provide him with a reasonable suspicion that the defendant was operating a vehicle while under the influence, or committing any other traffic offense, at the time he stopped her. In other words, at the time of the investigative stop by the sergeant, he did not have a reasonable suspicion based on the objective facts that the operator of the vehicle (whoever it was) was engaged in any type of activity prohibited by law, operating a motor vehicle under the influence, violating a traffic law, or violating any other law. The assignment of error is well taken.

For the foregoing reasons, the assignment of error is sustained, the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court with instructions to sustain the motion to suppress.

*Judgment reversed*
*and cause remanded*
*with instructions.*

McCormac and Martin, JJ., concur.

William J. Martin, J., of the Carroll County Common Pleas Court, sitting by assignment.