The STATE of Ohio, Appellant,

v.

CAMPBELL, Appellee.

[Cite as *State v. Campbell,* 157 Ohio App.3d 222, 2004-Ohio-2604.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20228.

Decided May 21, 2004.

Patrick J. Bonfield, Director of Law, Deirdre E. Logan, Chief Prosecutor, and Andrew D. Sexton, Assistant City Prosecutor, for appellant.

Arvin S. Miller, Montgomery County Assistant Public Defender, for appellee.

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellant state of Ohio appeals from an order suppressing evidence. The only issue raised in this appeal is whether defendant-appellee Donald Campbell was the subject of an investigative stop, or whether there was a mere consensual encounter between Campbell and the police officer, who ultimately found what appeared to be Valium, a controlled substance, upon Campbell's person.

{¶ 2} Both the arresting police officer and Campbell testified at the suppression hearing. The trial court concluded that Campbell was the subject of an investigative stop, not merely a consensual encounter, and ordered the evidence suppressed. Both in the trial court and on appeal, the state argues only that the circumstances amounted to no more than a consensual encounter. The state appears to recognize that the circumstances did not justify the police officer in performing an investigative stop.

{¶ 3} We conclude that the evidence in the record supports the trial court's findings. Accordingly, the suppression order is affirmed.

I

{¶ 4} Dayton police officer Doug George was patrolling the 2200 block of West Second Street, in Dayton, shortly before 5:00 p.m. in the afternoon in late September 2003. George was in uniform and armed.

{¶ 5} George saw Campbell sitting in the driver's seat of a vehicle parked at the curb. Campbell was the sole occupant. The engine was not running.

{¶ 6} George was familiar with the neighborhood and described it as a high-crime area, where there had been drug-related complaints and arrests. George was not familiar with Campbell. George decided to make contact with Campbell and attempt a field interview. George did not claim to have any particular suspicion that Campbell was involved in criminal activity.

{¶ 7} The state contends in its brief that George parked his cruiser approximately five to six car lengths behind Campbell's vehicle, but our reading of this testimony is different. We conclude that George's discussion of the number of car lengths behind Campbell's vehicle referred to the point where George turned around to pull in behind him. The trial court found that George's cruiser was parked immediately behind Campbell's vehicle, blocking Campbell in that direction, and we conclude that the evidence is susceptible of that interpretation.

{¶ 8} Campbell testified that George "jumped out" of the police cruiser and came up to Campbell's side of the car within five seconds to engage him in conversation.

{¶ 9} In terms of the substance of their conversation, Campbell's testimony corroborated George's. Campbell testified that not more than 20 to 30 seconds elapsed from when George came up to Campbell to George's asking Campbell for his identification. Campbell produced his driver's license.

{¶ 10} Campbell testified that he has previously been involved in a traffic stop and that the only thing different about this encounter from the time he was subject to a traffic stop was that on this occasion he had not been driving or moving before the police officer came up behind him.

{¶ 11} George took Campbell's license back to George's cruiser to run a computer check. This check revealed that there was a warrant outstanding for Campbell's arrest. During a search incident to that arrest, a substance that George believed to be Valium was recovered from Campbell's right front pocket.

{¶ 12} Campbell was subsequently charged with drug abuse, a misdemeanor of the third degree. Campbell moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court granted Campbell's motion and ordered the evidence suppressed. The state appeals from the order of the trial court suppressing the evidence.

## II

{¶ 13} The state's sole assignment of error is as follows:

{¶ 14} "The trial court erred in granting defendant-appellee's motion to suppress evidence when the encounter between the police officer and defendant-appellee was a consensual encounter and raised no Fourth Amendment issue."

{¶ 15} The state relies upon *California v. Hodari* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690, for the general proposition that the test for determining whether a police-citizen encounter rises from the level of a consensual encounter to the level of a seizure is whether a reasonable person, in light of all of the surrounding circumstances, would feel free to decline the officer's request or otherwise refuse the encounter. This is obviously a fact-sensitive determination.

{¶ 16} The state relies specifically upon *State v. Montgomery* (May 31, 1996), Montgomery App. No. 15232, 1996 WL 283943, for the proposition that the interaction between George and Campbell was merely a consensual encounter. In *State v. Montgomery,* an officer in a police cruiser asked a pedestrian to come to the cruiser. The officer told the pedestrian that the officer wanted to get the pedestrian's name and check him out for a second. When the pedestrian started walking back toward the cruiser, the officer noticed that the pedestrian had his hand in his right pocket. Based on the fact that weapons were not uncommon in that area, and out of a concern for the officer's safety, the officer asked the pedestrian to take his right hand out of his pocket, but the pedestrian did not take his hand out of his pocket, while continuing to approach the cruiser. When the pedestrian was two or three feet away from the cruiser, the officer shined his spotlight at the pedestrian, and ordered the pedestrian to remove his right hand from his pocket. The pedestrian then removed his hand from his pocket and tossed to the ground a substance that was later determined to have been crack cocaine.

{¶ 17} Although the issue is close, we conclude that the circumstances in the case before us are materially different from the circumstances in *State v. Montgomery,* supra. The defendant in *Montgomery* was a pedestrian who was asked to come talk to a police officer in a cruiser. Campbell was the lone occupant of a car, sitting in the driver's seat. The car was parked at a curb. The police cruiser had pulled up immediately behind Campbell, and George, the police officer, went immediately to the driver's side of the car to talk to Campbell. As the trial court found:

{¶ 18} "The facts of this case are that the defendant was seated in a vehicle, that a police car came up and blocked his ability to back up, got out, stood beside the defendant which blocked his ability to pull to the side. There was some testimony that there were vehicles in front of him. There was never a clear—clarification on the record how close those vehicles were. So, the Court does not know if he was totally blocked from pulling out in front or not. But we do know

that there was—he was against the curb.   So, there was no way he could get—move his vehicle that direction.   So, we know at least three of the four exits were blocked."

{¶ 19} Actually, there was testimony in the record that although there were probably one or two cars parked in front of Campbell's car, "they were a few car lengths up the street."   George testified that there was "nobody right immediately in front of [Campbell]," and Campbell did not rebut this.

{¶ 20} Nevertheless, as the trial court notes, Campbell was sitting in a parked car with a curb to his right, a police cruiser directly behind him, and a police officer standing at the driver's door.   Campbell testified that he did not feel free to leave under these circumstances, and we conclude that the trial court reasonably could have found, from all the attendant circumstances, that an objectively reasonable person in Campbell's situation would not have thought himself free to refuse the encounter and leave.

{¶ 21} Then, within 20 to 30 seconds, George asked for and received Campbell's driver's license and took it back to the police cruiser to run a computer check on it.   A reasonable person in Campbell's position would not believe himself free to leave while this was going on.   Although George testified that Campbell could have left at this point, leaving Campbell's driver's license in George's possession, so that George "probably would have had to mail it to him," we will charitably construe this testimony as having been facetious.   We conclude that a reasonable person in Campbell's position would not have deemed himself free to leave, secure in the assumption that the police officer who had taken possession of his driver's license would mail it to him.

{¶ 22} Although the issue is close, we conclude, based upon the totality of the circumstances, that an investigative stop occurred.   Accordingly, the state's sole assignment of error is overruled.

### III

{¶ 23} The state's sole assignment of error having been overruled, we affirm the judgment of the trial court.

Judgment affirmed.

WOLFF and GRADY, JJ., concur.