JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Robert Igoe ("Igoe") appeals his conviction in the Cuyahoga County Court of Common Pleas for carrying a concealed weapon in violation of R.C. 2923.12. For the reasons stated below, we affirm.
 {¶ 2} The transcript of proceedings reveals the following facts. On January 29, 2003, Donald Fox, a witness in this case, was working as a baggage handler at Cleveland Hopkins Airport. When Fox arrived for work around 4:30 a.m., he took a shuttle bus to the airport entrance. Upon exiting the bus, he recognized a man standing nearby. That man was appellant Igoe.
 {¶ 3} Fox had given Igoe a ride in his cab a few weeks earlier. Fox had picked him up at the Stonewall shooting range in Broadview Heights. During the cab ride, the two engaged in a conversation about Igoe's experience at the shooting range. Igoe expressed he had some interest in choosing a weapon, indicated he had tried out different weapons at the shooting range, and discussed the target he had shot at. Igoe also mentioned that he had purchased a gun, which was with the police pending certification for a permit. Fox also gave Igoe a ride to the shooting range the following day, but he did not recall any particulars of the conversation.
 {¶ 4} After recognizing Igoe at the entrance to the airport on January 29, Fox went to work at the United Airlines ticketing area. Shortly after reporting to work, Fox observed Igoe enter the airport and sit down. Fox continued to observe Igoe sitting and sleeping in the general public area, over a period of three hours. Fox did not observe Igoe doing anything wrong.
 {¶ 5} Nevertheless, Fox became concerned and informed a police officer working in the airport about Igoe. The officer was Officer Nathan Oliver. Fox informed Officer Oliver of the details of the cab ride, including the discussion of weapons, and told the officer that Igoe had been sitting in the airport for about three hours.
 {¶ 6} Officer Oliver testified that he approached Igoe, who was sitting in a chair and had a light blue bag to his left. Officer Oliver, who had another officer with him, asked Igoe where he was headed. Igoe indicated he was waiting for the Lorain transit bus. Upon request, Igoe provided Officer Oliver with identification, which was checked for warrants. No warrants were found.
 {¶ 7} Officer Oliver and Igoe gave somewhat different accounts of what happened next.
 {¶ 8} Officer Oliver testified that a woman and a small child were seated near Igoe. Officer Oliver became concerned and asked Igoe to stand up. When Igoe stood up, Officer Oliver observed a bulge in Igoe's pocket. Officer Oliver then asked if Igoe had anything on him that could hurt the officer. Igoe stated he had a gun holster. Officer Oliver testified he was concerned Igoe might have a gun on his person or in the bag. At that point, Officer Oliver grabbed Igoe and called for more backup. Igoe was then arrested.
 {¶ 9} Officer Oliver testified that after the arrest, the officers searched Igoe and found no weapons. They then searched his bag and found a gun. Officer Oliver also testified that the bag contained other items including "a lot of different writings such as swastikas."
 {¶ 10} Igoe testified that after no outstanding warrants were found, Officer Oliver asked if he could search Igoe. Igoe stated he told the officer that he had a holster on, but that the gun was not in it. He stated that an officer picked up his bag and he told the officer he did not want it searched. The officer asked if it was a gun, and Igoe responded that it was and informed them to be careful because it was loaded.
 {¶ 11} Igoe also testified that he had purchased the gun as a self-defense weapon. He indicated that he had gone through cycles of being homeless since 1993 and had been working toward improving his life. Igoe testified that in his experience as a homeless person he had encountered violence. When he purchased the gun, Igoe was subject to a background check. He also obtained a certificate of completion for a gun safety course he took at Stonewall. He claimed that he was at the airport waiting for a bus to Lorain, where he was going to pick up high school transcripts.
 {¶ 12} Following a jury trial, Igoe was convicted of carrying a concealed weapon. Igoe brought this appeal, raising two assignments of error for our review. Igoe's first assignment of error provides:
 {¶ 13} "Assignment of Error I: Appellant was denied effective assistance of counsel when trial counsel's failure to file a motion to suppress caused him prejudice."
 {¶ 14} Under his first assignment of error, Igoe claims he was denied effective assistance of counsel because of his trial counsel's failure to file a motion to suppress. Igoe argues that because the officer observed him doing nothing wrong, and only observed him sitting in a chair, there was no reasonable suspicion to conduct an investigatory search following a stop.
 {¶ 15} For a defendant to obtain a reversal of a conviction or sentence based on ineffective assistance of counsel, he must prove "(a) deficient performance (`errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment') and (b) prejudice (`errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable')." State v. Adams, 103 Ohio St.3d 508,2004-Ohio-5845, quoting Strickland v. Washington (1984),466 U.S. 668, 687, and State v. Bradley (1989), 42 Ohio St.3d 136. Because of the inherent difficulties in making this evaluation, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.Strickland, 466 U.S. at 689.
 {¶ 16} In this case, Igoe claims his counsel's performance was deficient because of the failure to file a motion to suppress. The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." Adams,
supra, quoting State v. Madrigal (2000), 87 Ohio St.3d 378,389, 2000-Ohio-448, and Kimmelman v. Morrison (1986),477 U.S. 365, 384. In order to demonstrate deficient performance, the defendant must establish a basis existed for suppression of the evidence. See Adams, supra. To establish resulting prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Adams, supra, quotingBradley, 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 17} We first consider whether Igoe has established a basis for suppression of the evidence. Igoe argues that Officer Oliver failed to indicate any suspicious behavior or other information that would lead to a reasonable belief that Igoe was armed and dangerous and would warrant the intrusion that occurred. Before we address Igoe's argument, we review the applicable standards for justifying a police intrusion.
 {¶ 18} It is well recognized that police officers may engage citizens in conversation without such questioning necessarily becoming a detention. Florida v. Royer (1983), 460 U.S. 491,497. Consensual encounters include many long-standing, routine police practices, which include approaching a person in a public place, engaging the person in conversation, requesting information from the person, examining the person's identification, and asking the person to search his or her belongings. Florida v. Rodriguez (1984), 469 U.S. 1.
 {¶ 19} Consensual encounters are those that involve no coercion or restraint on liberty. State v. Morris (1988)48 Ohio App.3d 137. The hallmark of a consensual encounter is whether the police have restrained the person's liberty, by physical force or display of authority, in such a way that a reasonable person would feel free to walk away. United States v.Mendenhall (1980), 446 U.S. 544. It is well settled that the Fourth Amendment is not implicated in the case of a consensual encounter. Id.
 {¶ 20} In this case Officer Oliver approached Igoe while he was sitting in a public area of the airport, asked him where he was going, and asked for identification. Nothing in the initial encounter would suggest that a reasonable person would not feel free to walk away.
 {¶ 21} Once Igoe provided his identification, Officer Oliver took it over to his partner to have it checked for warrants. Even if this could be viewed as having ripened the initial encounter into an investigatory stop,[1] facts existed that would allow a trier of fact to conclude that the stop was reasonable.
 {¶ 22} A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1. In assessing that conclusion, the police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants that intrusion." Id. An officer may also conduct a limited protective search for concealed weapons provided the officer has reasonable suspicion that his safety, or the safety of others, is in danger. Terry v.Ohio, supra; State v. Nickelberry, Cuyahoga App. No. 83964,2004-Ohio-5976; Garfield Hts. Metro. Park Dist. v. Skerl
(1999), 135 Ohio App.3d 586, 592. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. State v. Williams (1990),51 Ohio St.3d 58, 60.
 {¶ 23} The record in this case establishes that Officer Oliver was informed by Fox of his previous encounters as a cab driver with Igoe. Officer Oliver was informed that Igoe had been to the shooting range, had expressed an interest in weapons, and had indicated he had purchased a gun. Officer Oliver was also informed that Igoe had been at the airport since 4:30 a.m. and had been sitting and sleeping in a chair for three hours. Upon inquiry, Igoe indicated he had a gun holster on him. Igoe also had a blue bag with him. Igoe's presence in the airport was also during post-9/11 heightened airport security.
 {¶ 24} These facts and circumstances, together with any rational inferences that may be drawn therefrom, reasonably supported a conclusion that Igoe may have been armed and dangerous and warranted the intrusion. We cannot say that a basis existed to suppress the evidence.
 {¶ 25} Because there was no reasonable basis for filing a motion to suppress or a reasonable probability that it may have been granted, we do not find trial counsel's performance was deficient. Accordingly, Igoe's first assignment of error for ineffective assistance of counsel is overruled.
 {¶ 26} Igoe's second assignment of error provides:
 {¶ 27} "Assignment of Error II: The trial court erred in denying trial counsel's motion for a new trial because of highly prejudicial statements made to the jury."
 {¶ 28} Under this assignment of error, Igoe argues that Officer Oliver's improper testimony that Igoe's bag contained drawings of swastikas was prejudicial other-act evidence under Evid.R. 404(B) and warrants a new trial.
 {¶ 29} Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." In a criminal case where the defendant alleges that it was prejudicial error to allow the jury to hear certain testimony, the reviewing court must first determine if it was error to allow the jury to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Davis (1975),44 Ohio App.2d 335, 338. An error is harmless if it does not affect a substantial right of the accused. Crim.R. 52(A).
 {¶ 30} Here, we find the testimony concerning the drawings of swastikas was improper. However, the trial court instructed the jury to disregard the testimony, and there was significant evidence to support the conviction for carrying a concealed weapon. We cannot say that the improper testimony contributed to Igoe's conviction, and we find the introduction of the testimony was harmless error.
 {¶ 31} Igoe's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., concurs; Kilbane, P.J.,* concurs in Judgmentonly.
[1] See State v. Campbell, 157 Ohio App.3d 222, 226,2004-Ohio-2604 (finding a reasonable person would not believe himself free to leave after an officer had taken the defendant's identification back to the police cruiser to run a check on it).
* Judge Anne L. Kilbane concurred in judgment, but did not have the opportunity to review this Journal Entry and Opinion prior to her death on November 23, 2004.
(The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements. See State v. Pembaur (1982),69 Ohio St.2d 110.)
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).