The STATE of Ohio, Appellant,

v.

JONES, Appellee.

[Cite as *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–1053.

Decided June 22, 2010.

630

Richard C. Pfeiffer Jr., City Attorney, Lara N. Baker, City Prosecutor, and Melanie R. Tobias and Orly Ahroni, Assistant City Prosecuting Attorneys, for appellant.

Luftman, Heck & Assoc., L.L.P., and Daniel J. Sabol, for appellee.

BRYANT, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from a judgment of the Franklin County Municipal Court granting the motion of defendant-appellee, Thomas E. Jones, to suppress evidence. The state assigns a single error:

> The trial court erred in granting the defendant-appellee's motion to suppress evidence.

Because the trial court did not err in granting defendant's motion to suppress, we affirm.

## I. Facts and Procedural History

{¶ 2} On August 17, 2009, defendant was charged with one count of carrying a concealed weapon, a knife, in violation of R.C. 2923.12(A)(1), a first-degree misdemeanor. After pleading not guilty, defendant on September 29, 2009, filed a motion to suppress evidence, contending that police officers, lacking reasonable suspicion that defendant was engaged in any criminal activity, unlawfully detained him in his vehicle when they retained his driver's license to run a warrant check. Defendant claimed that all evidence that the police obtained following defendant's unlawful detention must be suppressed as the fruit of an illegal search and seizure.

{¶ 3} The trial court on October 28, 2009, held a hearing on defendant's suppression motion. At the hearing, the state's evidence was uncontroverted and

revealed that shortly after 1:00 a.m. on August 14, 2009, Columbus police officers Jason Garner and Duane Nicholson were on routine bicycle patrol in the vicinity of Sullivant Avenue and Belvedere Avenue in the Hilltop area of Columbus. The Hilltop section of Columbus is a purportedly high-crime area known to the officers for narcotics activity, prostitution, violent crimes, break-ins, and stolen vehicles. The officers observed a vehicle legally parked next to the curb on the right side of the road with its engine running and headlights turned off. Defendant, the sole occupant, was in the driver's seat with his head down. Wearing plainly marked police uniforms and badges, the police officers approached defendant's vehicle on their bicycles, with Officer Garner proceeding to the driver's side of the vehicle and Officer Nicholson positioning himself behind the vehicle's trunk.

{¶ 4} Officer Garner asked defendant several questions: whether everything was okay, why he was there, where he lived and worked, and whether he knew anyone in the area. Visibly nervous, shaking, and breathing heavily, defendant responded that everything was fine; he explained that he was waiting to go to work and had pulled over to text his girlfriend. Defendant told the officer he lived and worked in London, Ohio, and did not know anyone in the area where he was parked. The officers testified that defendant was not committing any traffic offense, no odor of alcohol or marijuana was about defendant's person, the officers had no indication that defendant was involved in narcotics or prostitution activity, and nothing suggested that defendant was otherwise involved in or about to commit any kind of criminal activity.

{¶ 5} Based on a belief that defendant had failed to provide a good explanation for why he was in the area, coupled with the reputation of the area and defendant's nervousness, the officers, relying on their intuition, suspected that something might be wrong. Officer Garner accordingly asked for defendant's driver's license to verify his identity and to run a records check for warrants. Defendant handed his license to the officer and remained in his vehicle. Officer Garner testified that defendant was not under arrest at that time and was free to leave had he chosen to do so.

{¶ 6} Some time after taking possession of defendant's driver's license to run the warrant check, Officer Garner asked defendant, "Is there anything on you or in your vehicle that could hurt us?" Defendant responded, "Yes, I have a knife next to me." Officer Garner testified that out of concern for the safety of the officers and defendant, he instructed defendant to put his hands out the car window so the officers could recover the knife and ensure that it could not be used as a weapon. Officer Garner then opened the driver's door and observed a knife wedged between the seat and the driver's door with the knife's handle facing the front of the vehicle. The knife was a military-style knife and was

enclosed in a sheath approximately 10 to 12 inches long that had a strap and button holding the knife in the sheath. Officer Garner asked defendant why he had the knife, and defendant explained he had it for fishing. Officer Garner testified that defendant was cooperative during the entire encounter, did not try to hide anything from the officers, and was not deceitful.

{¶ 7} In a written decision and entry on November 3, 2009, the trial court found that "while the investigative stop or detention of the Defendant initially was warranted, once it was determined that there was no criminal activity afoot, the officers were obligated to release the Defendant," rendering the officers' subsequent warrantless search of defendant's automobile and seizure of the knife illegal. The trial court granted defendant's motion to suppress and ordered that the knife the police seized be excluded from evidence.

{¶ 8} Appealing from the suppression order, the state has certified pursuant to Crim.R. 12(J) that the suppression order rendered the state's proof so weak that any reasonable possibility of effective prosecution has been destroyed.

## II. Assignment of Error

{¶ 9} In its sole assignment of error challenging the trial court's suppression order, the state asserts that the court erred as a matter of law by finding that the police officers' initial encounter with defendant was an investigatory stop or detention that triggered Fourth Amendment scrutiny, as opposed to a consensual encounter not subject to Fourth Amendment protections. The state contends that the police officers lawfully searched defendant's vehicle and seized the knife because defendant told the officers that he had a knife located next to him in the vehicle, a statement that justified the officers' decision to conduct the protective search of defendant's vehicle and seize the knife out of concern for their safety.

{¶ 10} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." *State v. Vest* (May 29, 2001), 4th Dist. No. 00CA2576, 2001 WL 605217. Thus, an appellate court's standard of review of the trial court's decision granting the motion to suppress is twofold. *State v. Reedy*, 10th Dist. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, ¶ 5, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100–01, 709 N.E.2d 913. Because the trial court is in the best position to weigh the credibility of the witnesses, we must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141. We nonetheless must independently determine, as a matter of law, whether the facts meet the applicable legal standard. Id., citing *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. The state bears the burden of establishing the validity of a warrantless search. *Xenia v. Wallace*

(1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889, citing *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252.

{¶ 11} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Section 14, Article I, of the Ohio Constitution, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza*, 10th Dist. No. 08AP–645, 2009-Ohio-1182, 2009 WL 690204, ¶ 11, citing *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Even so, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment. *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, fn. 16, 20 L.Ed.2d 889; *Brendlin v. California* (2007), 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132.

{¶ 12} In determining whether a particular encounter constitutes a seizure, and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding the encounter, a reasonable person would believe he or she was not free to leave or not free to decline the officers' requests or otherwise terminate the encounter. *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497; *Florida v. Bostick* (1991), 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389; *Michigan v. Chesternut* (1988), 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565; *Florida v. Royer* (1983), 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (plurality opinion). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick*, 501 U.S. at 437, 111 S.Ct. 2382, 115 L.Ed.2d 389, quoting *Chesternut*, 486 U.S. at 569, 108 S.Ct. 1975, 100 L.Ed.2d 565. Where the encounter takes place is a factor in deciding whether it constitutes a seizure for purposes of the Fourth Amendment. *Bostick*, 501 U.S. at 437, 111 S.Ct. 2382, 115 L.Ed.2d 389.

{¶ 13} The United States Supreme Court recognizes three categories of police-citizen interactions: (1) a consensual encounter, which requires no objective justification, see *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389, (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity, see *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and (3) a full-scale arrest, which must be supported by probable cause, see *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

{¶ 14} More particularly, a consensual encounter occurs when the police approach a person in a public place, the police engage the person in conversation, and the person remains free not to answer or to walk away. *Royer*, 460 U.S. at 497, 103 S.Ct. 1319, 75 L.Ed.2d 229; *Mendenhall*, 446 U.S. at 553–554, 100 S.Ct. 1870, 64 L.Ed.2d 497. The person "may not be detained even momentarily without reasonable, objective grounds for doing so." *Royer*, 460 U.S. at 498, 103 S.Ct. 1319, 75 L.Ed.2d 229. A consensual encounter does not implicate the Fourth Amendment or trigger its protections. *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389; *State v. Moyer*, 10th Dist. No. 09AP–434, 2009-Ohio-6777, 2009 WL 4936383, ¶ 13, citing *In re Parks*, 10th Dist. No. 04AP–355, 2004-Ohio-6449, 2004 WL 2757852, ¶ 7, citing *Royer*.

{¶ 15} Because the Fourth Amendment protections are not implicated in consensual encounters, a person's voluntary responses given during a consensual encounter may be used against the person in a criminal prosecution. *State v. Taylor* (1995), 106 Ohio App.3d 741, 749, 667 N.E.2d 60, citing *Mendenhall*, 446 U.S. at 559–60, 100 S.Ct. 1870, 64 L.Ed.2d 497. A consensual encounter remains consensual even if police officers ask questions, ask to see the person's identification, or ask to search the person's belongings, provided that "the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 434–435, 111 S.Ct. 2382, 115 L.Ed.2d 389; *Florida v. Rodriguez* (1984), 469 U.S. 1, 4–6, 105 S.Ct. 308, 83 L.Ed.2d 165; *I.N.S. v. Delgado* (1984), 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247.

{¶ 16} The next category of police-citizen interaction is an investigatory detention, commonly referred to as a *Terry* stop. See *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. An investigatory stop constitutes a seizure for purposes of the Fourth Amendment. *State v. Guinn* (June 1, 2000), 10th Dist. No. 99AP–630, 2000 WL 702897, citing *Terry*, 392 U.S. at 16. Under *Terry*, a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. Id. Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 35, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 17} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556–557, 591 N.E.2d 810,

citing *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Carter* (1994), 69 Ohio St.3d 57, 66, 630 N.E.2d 355 (concluding that a police "officer's inarticulate hunch will not provide a sufficient basis for an investigative stop"). Accordingly, "[a] police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557, 591 N.E.2d 810.

 {¶ 18} "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Chatton* (1984), 11 Ohio St.3d 59, 63, 11 OBR 250, 463 N.E.2d 1237. A person's mere presence in a high-crime area does not suspend the protections of the Fourth Amendment; nor is it a sufficient basis to justify an investigative stop. *Brown v. Texas* (1979), 443 U.S. 47, 51–52, 99 S.Ct. 2637, 61 L.Ed.2d 357; *Carter*, 69 Ohio St.3d at 65, 630 N.E.2d 355; *State v. Chandler* (1989), 54 Ohio App.3d 92, 97, 560 N.E.2d 832. An appellate court views the propriety of a police officer's investigative stop or detention in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, approving and following *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus.

 {¶ 19} The third and final category of police-citizen interaction is a seizure that is the equivalent of an arrest. "A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested." *Taylor*, 106 Ohio App.3d at 749, 667 N.E.2d 60, citing *State v. Barker* (1978), 53 Ohio St.2d 135, 7 O.O.3d 213, 372 N.E.2d 1324, syllabus. "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *United States v. Watson* (1976), 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598.

 {¶ 20} Generally, when a police officer merely approaches and questions persons seated within parked vehicles, a consensual encounter occurs that does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts. *State v. McClendon*, 10th Dist. No. 09AP–554, 2009-Ohio-6421, 2009 WL 4649968, ¶ 8; *State v. Chapa*, 10th Dist. No. 04AP–66, 2004-Ohio-5070, 2004 WL 2803971, ¶ 8; *State v. Szewczyk* (Sept. 14, 1999), 7th Dist. No. 98–CA–20, 1999 WL 759990, citing 3 LaFave, Search and Seizure (2d Ed.1987) 408–409, 415–416, Section 9.2(b). Indeed, the parties agree, and the facts in this case support, that defendant's initial interaction with the police

officers was consensual when the officers approached defendant's vehicle and asked him a few general questions.

{¶ 21} Nevertheless, what begins as a consensual encounter may escalate into an investigatory detention and seizure of a person that triggers Fourth Amendment scrutiny if, in view of all the circumstances surrounding the incident, a reasonable person would not feel free to leave or otherwise terminate the encounter. *Delgado,* 466 U.S. at 215, 104 S.Ct. 1758, 80 L.Ed.2d 247, citing *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870, 64 L.Ed.2d 497; *Moyer,* 2009-Ohio-6777, 2009 WL 4936383, at ¶ 18; *Guinn.* If the seizure is unlawful, any evidence obtained after the unlawful seizure must be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *State v. Pierce* (1998), 125 Ohio App.3d 592, 597, 709 N.E.2d 203. Thus, "statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will." *Royer,* 460 U.S. at 501, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶ 22} Even when police officers have a valid basis to initially detain the driver of a vehicle, the driver of the vehicle may not be detained further once that basis has been explained away, absent some specific and articulable facts that the detention was reasonable; the driver should be "free to continue on his way without having to produce his driver's license." *Chatton,* 11 Ohio St.3d at 63, 11 O.B.R. 250, 463 N.E.2d 1237, citing *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. See also *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (holding, "[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise suspect to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment"); *Brown,* 443 U.S. at 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (holding that absent some reasonable suspicion of misconduct, the detention of the defendant to determine his identity violated the defendant's Fourth Amendment right to be free from an unreasonable seizure); *Jones,* 70 Ohio App.3d 554, 591 N.E.2d 810 (finding that police officer's request for driver of lawfully parked vehicle to produce identification constituted an unlawful detention when police lacked any reasonable suspicion that driver was involved in criminal activity, thus requiring fruits of the unlawful detention to be suppressed under the exclusionary rule).

{¶ 23} Here, when the officers took defendant's driver's license to check for warrants, they relied merely on their intuition and acted upon a hunch that

something might be wrong; they could point to no specific articulable facts supporting a reasonable suspicion that defendant was involved in criminal activity. As this court noted in *Columbus v. Holland* (1991), 76 Ohio App.3d 196, 601 N.E.2d 190, an officer's intuition that "something was wrong," even though ultimately confirmed, will not provide a sufficient basis for an investigatory stop. See also *Guinn*, 2000 WL 702897, *6 (noting that "a hunch is not an accepted basis for intruding upon a citizen's Fourth Amendment rights"); *Logan v. Bunthoff* (Apr. 14, 1994), 4th Dist. No. 93CA11, 1994 WL 146830, *2 (concluding that an officer's belief that someone is "up to something" or that his actions are "not normal" does not justify a reasonable suspicion that criminal activity is afoot).

{¶ 24} Applying the governing principles to the facts in this case, we conclude that even if the police officers' interaction with defendant began as a consensual encounter, the consensual nature of that encounter escalated into an investigative detention when the officers, unsatisfied with defendant's explanation as to why he was parked in a high-crime area, sought to confirm their intuition that something might be wrong. The officers asked for and retained defendant's driver's license to run a warrants check to confirm or dispel their suspicions. At that moment, any consensual aspects of the encounter ended, and defendant was seized within the meaning of the Fourth Amendment.

{¶ 25} Contrary to the state's assertions, no reasonable person would believe that he or she is free to terminate the encounter and simply drive away when an officer retains his or her driver's license for the purpose of running a computer check for outstanding warrants. See *State v. Campbell*, 157 Ohio App.3d 222, 2004-Ohio-2604, 810 N.E.2d 447 (concluding that an objectively reasonable person would not have thought himself free to refuse the encounter and leave when police officer asked for and retained his driver's license in order to run a warrants check while he sat in driver's seat in car parked at the curb with police cruiser behind the car and police officer standing at driver's door). See also *Commonwealth v. Lyles* (2009), 453 Mass. 811, 815–16, 905 N.E.2d 1106 (finding that when police officers took a person's identification to run a check for outstanding warrants, a reasonable person in that person's position would not believe that he could terminate the encounter and leave the scene); *State v. Daniel* (Tenn.2000), 12 S.W.3d 420, 427 (stating that "when an officer retains a person's identification for the purpose of running a computer check for outstanding warrants, no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification"); *United States v. Lambert* (C.A.10, 1995), 46 F.3d 1064, 1068 (stating that "when law enforcement officials retain a person's driver's license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to

terminate the encounter"); *Richmond v. Commonwealth* (1996), 22 Va.App. 257, 468 S.E.2d 708 (holding that "what began as a consensual encounter quickly became an investigative detention once the [officer] received [appellant's] driver's license and did not return it to him"); *State v. Thomas* (1998), 91 Wash.App. 195, 955 P.2d 420, 423 (stating that "[o]nce an officer retains the suspect's identification or driver's license and takes it with him to conduct a warrants check, a seizure within the meaning of the Fourth Amendment has occurred").

{¶ 26} By retaining defendant's driver's license to run a check for outstanding warrants, Officer Garner implicitly commanded defendant to remain on the scene since, as a practical matter, defendant was immobilized without his driver's license. To abandon his or her driver's license and drive away is not a realistic option for a reasonable person in today's society. *Royer*, 460 U.S. at 501–502, 103 S.Ct. 1319, 75 L.Ed.2d 229; *United States v. Jordan* (D.C.Cir.1992), 958 F.2d 1085, 1087; *Lyles; Daniel.*

{¶ 27} Under the particular facts and circumstances of this case, when the police officers asked for and retained defendant's driver's license to run a warrants check without reasonable suspicion that defendant was, or was about to be, engaged in criminal activity, defendant was unlawfully seized within the meaning of the Fourth Amendment. Because defendant's unlawful seizure occurred before he made his statement to Officer Garner regarding the knife, which statement led to the officers' search of defendant's vehicle and seizure of the knife, defendant's statement regarding the knife and any evidence obtained in the search of defendant's vehicle must be suppressed as fruit of the poisonous tree. *Wong Sun; Mapp; Royer; Pierce.*

## III. Disposition

{¶ 28} Because the trial court did not err in granting defendant's motion to suppress, we overrule the state's sole assignment of error and affirm the judgment of the Franklin County Municipal Court.

Judgment affirmed.

BROWN and KLATT, JJ., concur.