The STATE of Ohio, Appellee,

v.

CURTIS, Appellant.

[Cite as *State v. Curtis*, 193 Ohio App.3d 121, 2011-Ohio-1277.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23895.

Decided March 18, 2011.

Laura M. Woodruff, Assistant Prosecuting Attorney, for appellee.

Jessica R. Moss, for appellant.

DONOVAN, Judge.

{¶ 1} Defendant-appellant Tony N. Curtis appeals from his conviction and sentence for one count of aggravated possession of drugs (in the bulk amount but less than five times the bulk amount), in violation of R.C. 2925.11(A), a felony of the third degree.

I

{¶ 2} The incident that forms the basis for this appeal occurred on February 24, 2008, at approximately 5:20 p.m., when Officers Myers and Yoder of the Centerville Police Department were dispatched to 2 Chase Drive at the Chevy Chase Apartments located in Centerville. The officers were dispatched to investigate an anonymous tip that a person named Tony Curtis was trespassing on the grounds of the apartment complex. According to the tipster, Curtis had been previously banned from the property on an earlier date, but the officers made no attempt to confirm the tipster's information before arriving at the scene.

{¶ 3} Upon arriving at the apartment complex, Officer Myers testified, he observed Officer Yoder talking with two men in front of 2 Chase Drive, who were standing near a green 1995 Ford Thunderbird. The two men were identified as the appellant, Curtis, and Steven Creech. Curtis testified that he was visiting Creech, who lived at that address in the complex. Curtis also testified that Officer Yoder parked his cruiser in a position blocking in his vehicle.

{¶ 4} Curtis testified that Officer Yoder informed him that he and Officer Myers were investigating a complaint that someone named Tony Curtis was trespassing at the apartment complex. Officer Yoder asked for Curtis's identification and was able to verify his identity. After they contacted dispatch, the officers determined that Curtis was not, in fact, banned from the apartment complex. Officer Myers specifically testified that he was able to determine that Curtis was not engaged in any criminal activity from the "actual moment that [he and Officer Yoder] made contact with him." Officer Myers also testified that he thought that Curtis was coherent and did not appear to be under the influence of any drugs or alcohol.

{¶ 5} Curtis testified that after it was determined that he was not banned from the property, Officer Yoder kept asking him questions and remained in possession of his driver's license. Officer Yoder asked Curtis why he was at the complex, and Curtis explained that he was there to visit his friend, Creech. In light of the location of Officer Yoder's cruiser, which blocked in his vehicle, as well as the officer's failure to return his driver's license, Curtis testified that he felt that he was not free to leave.

{¶ 6} While Officer Yoder was talking to Curtis, Officer Myers walked over to the passenger side of Curtis's vehicle and looked inside. Officer Myers testified that from his vantage point, he could see three orange pill bottles with white caps in the driver's door pocket. Officer Myers further testified that the pill bottles had no labels and seemed to contain a white residue.

{¶ 7} Officer Myers asked Curtis about the pill bottles and whether he was taking any prescribed medications, and Curtis stated that he was not and that the pill bottles had been in his car for a long time. Officer Myers testified that he then asked Curtis if there were any prescription medications in his vehicle, and Curtis replied that there might be some Xanax pills in his car. Officer Myers asked Curtis if he a valid prescription for the Xanax pills. Curtis testified that he responded that he did at one time but that his prescription was not current. Officer Myers testified that Curtis stated that he had received the pills from a friend.

{¶ 8} At that point, Officer Myers testified that he placed Curtis in the back of his cruiser and conducted a probable-cause search of the vehicle. Officer Myers testified that he searched the pill bottles that he had seen in the driver's door, and all of the bottles contained an unidentified white residue. Next to the bottles, Officer Myers discovered more pills, which were later identified as methadone, a Schedule II narcotic. Officer Myers then read Curtis his *Miranda* rights and placed him under arrest. After securing Curtis in the back of the cruiser, Officers Myers and Yoder conducted a second search of his vehicle, wherein they located a large quantity of prescription medication and other controlled substances.

{¶ 9} On May 14, 2008, Curtis was indicted on one count of aggravated possession of drugs (in the bulk amount but less than five times the bulk amount), three counts of aggravated possession of drugs (Schedule I or II), and one count of possession of heroin. At his arraignment on May 29, 2008, Curtis pleaded not guilty to all of the charges against him.

{¶ 10} Curtis filed a motion to suppress any physical evidence recovered from his vehicle, as well as any statements made by him to the police prior to his arrest. A hearing was held on July 26, 2008, after which the trial court ordered the parties to submit posthearing briefs in support of their positions. After

considering the parties' arguments, the trial court overruled Curtis's motion to suppress in a written decision filed on October 7, 2008.

{¶ 11} In return for dismissal of all remaining counts in the indictment, Curtis ultimately pleaded no contest to one count of aggravated possession of drugs (in the bulk amount but less than five times the bulk amount). The court found Curtis guilty and sentenced him to five years of community control and suspended his driver's license for six months.

{¶ 12} It is from this judgment that Curtis now appeals.

## II

{¶ 13} Curtis' first assignment of error is as follows:

{¶ 14} "The trial court erred by overruling appellant's motion to suppress because the police officer did not have a reasonable and articulable suspicion that appellant was engaged in criminal activity."

{¶ 15} In his first assignment, Curtis contends that the trial court erred when it overruled his motion to suppress because Officers Yoder and Myers did not have a reasonable, articulable suspicion to detain and question him once it became apparent that he was not trespassing at the apartment complex. Specifically, Curtis argues that the initial encounter between himself and the police officers was not consensual because Officer Yoder blocked in his vehicle and refused to return his driver's license while questioning him. Curtis asserts that a reasonable person in the same situation would not have felt free to leave. Accordingly, once it was ascertained that Curtis was not trespassing, the officers' continued detention of Curtis became illegal, and any evidence derived from the unlawful detention should have been suppressed.

{¶ 16} In regard to a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, Montgomery App. No. 20662, 2005-Ohio-3733, 2005 WL 1707019, citing *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 17} The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides: "The right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Violations of the Fourth Amendment require courts to apply the exclusionary rule, suppressing use of any evidence that was illegally obtained. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

{¶ 18} "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Not all interactions between citizens and the police, however, constitute a seizure. Rather, the interactions between citizens and law enforcement officers can fall within three distinct categories: a consensual encounter, an investigative detention, and an arrest. *State v. Taylor* (1995), 106 Ohio App.3d 741, 747–749, 667 N.E.2d 60.

{¶ 19} "Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away. The encounter remains consensual even if the officer asks questions, requests to examine an individual's identification, and asks to search the person's belongings, provided that the officer does not convey that compliance is required. 'The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter.' (Citations omitted.) *Taylor*, 106 Ohio App.3d at 747–48 [667 N.E.2d 60].

{¶ 20} "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. * * * Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. * * * 'Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or "hunch" but less than the level of suspicion required for probable cause.' *State v. Jones* (1990), 70 Ohio App.3d 554, 556–557, 591 N.E.2d 810. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances ' "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." ' *State v. Heard*, Montgomery App. No. 19323, 2003-Ohio-1047, at ¶ 14, quoting *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271. * * *

{¶ 21} "The final category is a seizure that is the equivalent of an arrest. 'A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under the real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested.' *Taylor*, 106 Ohio App.3d at 749 [667 N.E.2d 60]. An arrest must be based on probable cause." (Citations omitted.) *State v. Lewis*, Montgomery App. No. 22726, 2009-Ohio-158, 2009 WL 105635, ¶ 20–23.

{¶ 22} Ohio courts have recognized three categories of informants: (1) citizen informants, (2) known informants, i.e., those from the criminal world who have previously provided reliable tips, and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 300, 720 N.E.2d 507. "[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity" in order to justify an investigative stop. *Alabama v. White* (1990), 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.

{¶ 23} After being informed of the anonymous tip that someone named Tony Curtis was trespassing at the Chevy Chase apartments, Officers Yoder and Myers traveled to that location and immediately observed two men standing in the parking lot directly in front of 2 Chase Drive. Officer Yoder parked his cruiser behind Curtis's vehicle. Curtis testified that his vehicle was blocked and that he could not leave without hitting the cruiser. In its decision overruling Curtis's motion to suppress, the trial court acknowledged that "Officer Yoder had pulled his cruiser behind [Curtis's] car making it difficult (but not impossible) for [Curtis] to leave." "One whose vehicle is blocked by a police cruiser from free movement and who is under questioning by a uniformed officer cannot 'feel free' to get into his car and leave," and "[h]is detention constitutes a 'seizure' within the meaning of the Fourth Amendment." *State v. Inabnitt* (1991), 76 Ohio App.3d 586, 589–590, 602 N.E.2d 740.

{¶ 24} Additionally, after exiting his cruiser, Officer Yoder took possession of Curtis's driver's license in order to verify his identity and check to see whether he had, in fact, been banned from the property. Once Officer Yoder discovered that Curtis was not trespassing, he retained possession of the driver's license. Officer Myers testified that at this point, Curtis was not under suspicion for any crime and was therefore free to leave. In a similar case, we held that a trial court did not err when it held that a reasonable person would not have felt free to leave when a police officer had partially blocked in a defendant's vehicle and taken his driver's license. *State v. Campbell*, 157 Ohio App.3d 222, 2004-Ohio-2604, 810 N.E.2d 447. By retaining Curtis's driver's license after he ran a check to verify his identity and verify that he was not trespassing, Officer Yoder "implicitly commanded defendant to remain on the scene since, as a practical

matter, defendant was immobilized without his driver's license. To abandon his or her driver's license and drive away is not a realistic option for a reasonable person in today's society." *State v. Jones,* 188 Ohio App.3d 628, 640, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 26.

{¶ 25} From the moment Officers Yoder and Myers arrived at the scene, Curtis was under suspicion of trespassing at the apartment complex and thus was the subject of an investigative stop. Moreover, under the totality of the circumstances, it is clear that Curtis was not free to leave the scene once Officer Yoder blocked Curtis's vehicle and retained possession of his driver's license. From these facts, a reasonable person would not have felt free to leave. Once the officers became aware that Curtis was not trespassing and was not a suspect in any other criminal activity, the investigative stop should have ended and Curtis should have been allowed to leave. Instead, Officer Yoder did not move his cruiser, nor did the officer return Curtis's driver's license. From that point, Curtis was illegally detained by the officers, and any observations or evidence derived from the unlawful detention was subject to suppression. The trial court erred when it held that a reasonable person in Curtis's predicament would have felt that he was free to decline Officer Yoder's requests and terminate the encounter.

{¶ 26} Curtis's first assignment of error is sustained.

### III

{¶ 27} Curtis's second and third assignments of error are as follows:

{¶ 28} "The trial court erred by overruling appellant's motion to suppress because appellant's Fifth Amendment rights were violated when he was questioned about the contents of the pill bottles without being informed of *Miranda* rights."

{¶ 29} "The trial court erred by overruling appellant's motion to suppress because the officers conducted an unlawful search of appellant's vehicle."

{¶ 30} In light of our disposition regarding Curtis's first assignment of error, his remaining assignments are rendered moot.

### IV

{¶ 31} Curtis's first assignment of error having been sustained, the judgment of the trial court is reversed and this matter is remanded for proceedings consistent with this opinion.

> Judgment reversed
> and cause remanded.

GRADY, P.J., and FAIN, J., concur.