[Cite as *State v. Grefer*, 2014-Ohio-51.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                                    :

    Plaintiff-Appellee                                     :               C.A. CASE NO.    25501

v.                                                                      :               T.C. NO.    12CR798

MARY K. GREFER                                             :                  (Criminal appeal from
                                                                                     Common Pleas Court)

    Defendant-Appellant                               :

                                                                        :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___10th___ day of ___January___, 2014.

· · · · · · · · · ·

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, 301 W.
Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

SCOTT A. ASHELMAN, Atty. Reg. No. 0074325, 703 Liberty Tower, 120 W. Second
Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

    **{¶ 1}** Defendant-appellant Mary K. Grefer appeals her conviction and sentence for

one count of possession of heroin, in violation of R.C. 2925.11(A), a felony of the fourth

degree.   Grefer filed a timely notice of appeal with this Court.

{¶ 2}   The incident which forms the basis for the instant appeal occurred on the afternoon of Saturday, March 10, 2012, when Dayton Police Officers Mark Orick and Robert Clinger were monitoring the parking lots of the Wendy's and McDonald's restaurants located on Edwin C. Moses Boulevard in Dayton, Ohio.   Officers Orick and Clinger made a felony drug arrest in the same location earlier the same day and decided to return to observe the area for further criminal activity.   In order to view the area without being seen, the officers positioned themselves in a room on the second-floor of an abandoned Econo Lodge Hotel located adjacent to the area under observation.

{¶ 3}   At approximately 4:30 p.m., Officer Orick observed a late model maroon Ford Mustang enter the Wendy's parking lot.   The driver parked two or three spots away from the entrance to the restaurant, and the front-seat passenger, a male, exited the vehicle and pulled the seat forward, thereby allowing a female, later identified as Grefer, to exit the rear of the vehicle.   Grefer briefly spoke with the front-seat passenger, later identified as Wells, and then went into the restaurant.

{¶ 4}   Officer Orick testified that he observed Wells (with his binoculars) get back in the Mustang and hand the driver, later identified as Carswell, a small baggie.   Officer Orick then observed Carswell remove the substance from the baggie and begin preparing or "cooking" what appeared to be heroin for immediate use inside the vehicle.   Officer Orick also observed Carswell place a hypodermic needle on the dashboard of the vehicle while "cooking" the heroin.

{¶ 5}   After obtaining the license plate number of the vehicle, Officers Orick and Clinger left their vantage point and attempted to approach the Mustang's occupants without

being seen. Wells, however, apparently noticed the approaching officers and yelled out a warning to Carswell. Before Wells was apprehended and secured at the scene by Officer Clinger, Carswell started the car and fled the parking lot, nearly striking Officer Orick in the process.[1]

{¶ 6} After helping Officer Clinger secure Wells, Officer Orick entered the Wendy's restaurant in order to locate Grefer. Officer Orick immediately observed Grefer walking out of the restroom. Upon observing Officer Orick, Grefer hastily turned around and tried to re-enter the restroom. Officer Orick testified that he stated "stop, I need to talk to you!" When she did not stop walking back towards the restroom, Officer Orick grabbed her arm and escorted Grefer from the restaurant. As they were walking outside, Grefer attempted to reach into the right pocket of her jeans. Officer Orick asked her to stop, but as they walked through the exit of the restaurant, Grefer again attempted to reach into her pocket. Officer Orick advised her again not to reach into her pocket. Officer Orick testified that he told Grefer that if she tried to reach into her pocket again, he would handcuff her. As they got outside, Grefer tried to reach into her pocket one last time, and Officer Orick handcuffed her.

{¶ 7} Officer Orick testified that based upon the totality of the circumstances and the fact that Grefer kept reaching for her pocket, he was concerned that she was armed. Officer Orick, therefore, decided to pat Grefer down for weapons, but he waited until he was outside the restaurant so as not to alarm other patrons. Upon patting Grefer down, Officer

---

[1]Officer Orick testified that Carswell was subsequently arrested two days later.

Orick testified that he felt an object sticking out from her right jeans pocket, but could not identify what it was. Officer Orick asked Grefer why she kept reaching for her pocket, and she stated that there was heroin in her pocket.

{¶ 8} Officer Orick testified that he asked Grefer for her consent to remove the contraband from her pocket, and she said "go ahead." Officer Orick reached into her pocket and removed a baggie containing a grayish, chunky substance he recognized as heroin and a single clear gel capsule containing a white powdery substance, later identified as cocaine.

{¶ 9} After being escorted back to a police cruiser, Grefer indicated that she wished to speak privately to Officer Orick. Before speaking with her, Officer Orick read Grefer her *Miranda* rights. Grefer then explained to Officer Orick that she traveled to Dayton with Wells and Carswell specifically to purchase heroin. Once the drug had been purchased, it was given to Grefer to hold immediately for the benefit of all three suspects prior to her entering the Wendy's restroom. Grefer was subsequently arrested and taken to jail.

{¶ 10} On April 20, 2012, Grefer was indicted for one count of possession of heroin and one count of possession of cocaine. At her arraignment on May 3, 2012, Grefer stood mute, and the trial court entered a plea of not guilty on her behalf.

{¶ 11} On June 4, 2012, Grefer filed a motion to suppress. Grefer filed a supplemental memorandum to her motion to suppress on September 24, 2012. A hearing was held on said motion on October 4, 2012. At the close of the hearing, the trial court overruled Grefer's motion to suppress from the bench. The trial court issued a written decision and entry overruling Grefer's motion on October 5, 2012.

{¶ 12}   Grefer ultimately pled no contest to one count of possession of heroin in return for dismissal of the count for possession of cocaine.   The trial court found Grefer guilty of possession of heroin and sentenced her to nine months in prison, with credit for time served.   Grefer's driver's license was also suspended for six months.

{¶ 13}   It is from this judgment that Grefer now appeals.

{¶ 14}   Grefer's sole assignment of error is as follows:

{¶ 15}   "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO DISMISS AND/OR SUPPRESS EVIDENCE, AS THE AGENTS OF THE DAYTON POLICE DEPARTMENT VIOLATED HER RIGHTS UNDER THE 4TH AND 14TH AMENDEMENTS."

{¶ 16}   In her sole assignment, Grefer contends that the trial court erred when it overruled her motion to suppress the contraband seized from her person by Officer Orick. Specifically, Grefer argues that Officer Orick detained and patted her down her without a reasonable, articulable suspicion of criminal activity.   In the alternative, Grefer argues that Officer Orick's pat down should have been limited to securing his and Officer Clinger's safety.   Finally, Grefer argues that Officer Orick conducted an impermissible custodial interrogation, which prompted her to make incriminating statements, without first being apprised of her constitutional rights.

{¶ 17}   As this Court has previously noted:

"Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted) .   At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted).   The trial court is

in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence." *State v. Hurt*, Montgomery App. No. 21009, 2006-Ohio-990. *State v. Purser*, 2d Dist. Greene No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

{¶ 18} Initially, we note that the only witness who testified at the hearing held on Grefer's motion to suppress was Officer Orick. The trial court found his testimony credible and adopted it as the court's factual findings.

{¶ 19} The Fourth Amendment to the Untied States Constitution, which is applicable to the states through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized." Violations of the Fourth Amendment require courts to apply the exclusionary rule, suppressing use of any evidence that was illegally obtained. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶ 20} As this Court has previously noted:

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Not all interactions between citizens and the police, however, constitute a seizure. Rather, the interactions between citizens and law enforcement officers can fall within three distinct categories: a consensual encounter, an investigative detention, and an arrest. *State v. Taylor* (1995), 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60.

\*\*\*

"An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. \* \* \* Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. \* \* \* . 'Reasonable suspicion entails some minimal level of objective justification for making a stop - that is, something more than an inchoate hunch and unparticularized suspicion or "hunch" but less than the level of suspicion required for probable cause.' *State v. Jones* (1990), 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "'through the

eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Heard*, Montgomery App. No. 19323, 2003-Ohio-1047, at ¶ 14, quoting *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271. * * *" *State v. Curtis*, 193 Ohio App.3d 121, 2011-Ohio-1277, 951 N.E.2d 131 (2d Dist.).

{¶ 21}  In overruling Grefer's motion to suppress, the trial court specifically made the following findings:

> *** The Court is of the view in this case, all the activity by Wells and [Carswell], the fact that Ms. Grefer was with them, was in a car with them, spoke with them, left, then when confronted with a police officer turns and flees.  Then upon being detained, keeps reaching into her pockets.  Those three or four facts and you know you can't consider a high crime area or a high drug area alone.  But when that factor along with the other things, all in combination, the totality in this situation in my view gives rise to the propriety of a stop and then there was consent and the drugs were found.  I think as long as it's a lawful stop, the Defendant gives consent after a lawful stop, she then begins to make incriminating statements, under all those circumstances, the Court finds no violation of the Constitution.  No violation of the Fourth Amendment.  So the motion to suppress is overruled. MTS Trans. p. 52-53.

{¶ 22}  Having thoroughly reviewed the record before us, and accepting the facts as found by the trial court, we conclude that a reasonable, articulable suspicion justified the

investigative detention of Grefer. The area in which Grefer was detained was known as an area with a high degree of drug activity. In fact, the officers had just returned to the area after making a drug arrest earlier on the same day. Grefer was observed to be in the same vehicle with both Wells and Carswell just before they began cooking heroin in the front seat of the vehicle. When the officers approached the vehicle, Carswell immediately fled the scene, almost striking Officer Orick with his vehicle. Moreover, when Officer Orick approached Grefer, she immediately turned around and tried to go back into the restroom that she had just exited. Thus, we agree with the trial court that Officer Orick possessed a reasonable, articulable suspicion to stop and question Grefer.

{¶ 23} Grefer argues that the police lacked sufficient reasonable suspicion that she was armed and dangerous to justify a pat-down search of her person for weapons. She further asserts that the pat-down search police performed exceeded its permissible scope and purpose.

{¶ 24} Even though an investigatory stop and detention of Grefer was justified, it does not necessarily follow that a frisk for weapons was also warranted. *State v. Lynch*, 2d Dist. Montgomery No. 17028, 1998 WL 288936 (June 6, 1998); *State v. Mickey*, 2d Dist. Montgomery No. 11582, 1990 WL 94592 (June 29, 1990). A pat-down search for weapons requires reasonable grounds to believe that the suspect is armed and dangerous. *State v. Andrews* , 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991). The officer need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. *Id*.

{¶ 25}  Officer Orick's testimony elicited at the suppression hearing established that he possessed a reasonable belief that Grefer was armed such that pat down for weapons was warranted.  Before approaching Grefer, Officer Orick had just observed her two male companions "cooking" heroin in a vehicle in the parking lot.  Ohio courts, including this one, have long recognized that persons engaged in illegal drug activity are often armed with a weapon. *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993); *State v. Taylor*, 82 Ohio App.3d 434, 612 N.E.2d 728 (2d Dist.1992); *State v. Lindsey* , Montgomery App. No. 18073, 2000 WL 799733 (June 23, 2000).  If, as we have already concluded, Officer Orick had a reasonable suspicion that Grefer may be involved in illegal drug activity, he likewise had a legitimate concern that she might be armed and posed a danger to his and Officer Clinger's safety based upon her conduct.  That concern was enhanced after Grefer tried to place her hand inside her pants pocket three separate times after being told by Officer Orick not to do so.  Officer Orick testified that he told Grefer that if she tried to reach into her pocket again, he would handcuff her.  As they exited the restaurant, Grefer tried to reach into her pocket a third time, and Officer Orick handcuffed her.

{¶ 26}  The totality of the facts and circumstances in this case, when viewed through the eyes of Officer Orick on the scene, is sufficient to give rise to a reasonable fear that Grefer may have been armed, justifying the slight inconvenience and minimal intrusion that a pat-down search for weapons entailed.  Furthermore, the pat-down search performed by Officer Orick did not exceed its permissible scope or purpose, which is to search only for weapons that might be used to harm the officer, not search for evidence of a crime or contraband. *Terry, supra*.

**{¶ 27}** As Officer Orick was patting down Grefer's outer clothing for weapons, he felt an object in her right front pants pocket, the same pocket where she had repeatedly attempted to place her hand. Officer Orick testified that he could not identify what the object was. Officer Orick asked Grefer why she kept reaching for her pocket, and she stated that there was heroin in her pocket. Officer Orick testified that he asked Grefer for her consent to remove the contraband from her pocket, and she said "go ahead." Officer Orick reached into the pocket and removed a baggie containing a grayish, chunky substance he recognized as heroin and a single clear gel capsule containing a white powdery substance, later identified as cocaine.

**{¶ 28}** We note that after Grefer admitted that there was heroin in her pocket, Officer Orick asked for her consent before reaching into her pocket and retrieving the heroin. The state bears the burden to prove that consent was freely and voluntarily given. *State v. Sears*, Montgomery App. No. 20849, 2005-Ohio-3880, ¶ 34, citing *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

**{¶ 29}** We have previously explained the standard for determining whether consent is voluntary:

> "Whether consent is in fact voluntary or the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the facts and circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218. Knowledge of the right to refuse consent is not a prerequisite to establishing voluntary consent, but is a relevant factor to be taken into account. Consent to a search that is obtained by threats or force,

or granted only in submission to a claim of lawful authority, is invalid. *Id.* Such 'lawful authority' is an express or implied false claim by police that they can immediately proceed to make the search in any event. *Bumper v. North Carolina*." *Sears*, supra at ¶37.

**{¶ 30}** In *Sears*, we indicated that the officer asking the offender if he could remove the contraband from the offender's pocket was not coercive or threatening and that nothing in the record indicated that consent was given in response to a claim by the officer that the officer had the lawful authority to remove the contraband even if consent was not given. *Id.* at ¶39. The same reasoning could equally apply in this case. *State v. Lovins*, 2d Dist. Montgomery No. 23530, 2010-Ohio-3916. Upon review, we agree with the trial court that the testimony indicates that Grefer voluntarily consented to having Officer Orick remove the contraband from her pocket.

**{¶ 31}** Lastly, Grefer argues that Officer Orick had no right to question her about the nature of the object in her pocket in the absence of *Miranda* warnings, and therefore, her statements as to what the object was should have been suppressed. Grefer, however, never raised the *Miranda* issue in her motion to suppress, nor did she argue that her *Miranda* rights were violated during the suppression hearing before the trial court. Rather, Grefer only argued that the investigative stop initiated by Officer Orick was unlawful. As a result of Grefer's failure to raise the issue in her motion to suppress or during the hearing, the trial court did not, nor was it required to, address the potential *Miranda* violation in its findings of fact or conclusions of law. Thus, we conclude that Grefer waived her *Miranda* argument by failing to raise it before the trial court. See *State v. Matthews*, 2d Dist. Montgomery No.

24233, 2011-Ohio-5066, ¶ 38.

**{¶ 32}** Accordingly, we conclude that the trial court correctly denied Grefer's motion to suppress.

**{¶ 33}** Grefer's sole assignment of error is overruled.

**{¶ 34}** Grefer's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and WELBAUM, J., concur.

Copies mailed to:

April F. Campbell
Scott A. Ashelman
Hon. Timothy N. O'Connell