[Cite as *State v. Thomas*, 2017-Ohio-8606.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee                 :          Appellate Case No. 27588
                                       :
v.                                     :          Trial Court Case No. 16-CR-2075
                                       :
LORENZO R. THOMAS                      :          (Criminal Appeal from
                                       :           Common Pleas Court)
    Defendant-Appellant                :
                                       :

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of November, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by DYLAN G. SMEARCHECK, Atty. Reg. No. 0085249, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

MATTHEW SUELLENTROP, Atty. Reg. No. 0089655, 6 North Main Street, Suite 400, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Lorenzo R. Thomas appeals from his conviction and sentence following a no-contest plea to one count of heroin possession, a fifth-degree felony.

{¶ 2} In his sole assignment of error, Thomas challenges the trial court's denial of a suppression motion he filed prior to his plea. The motion sought suppression of evidence obtained as a result of an allegedly unlawful seizure. (Doc. #16).

{¶ 3} The suppression issue proceeded to an April 5, 2017 hearing. The only witness at the hearing was Mark Orick, a Dayton police officer. Orick testified that on June 28, 2016, he was in a marked cruiser and wearing the uniform of the day. He was assigned to patrol public-housing properties, including the Hilltop apartments in Dayton. He was driving a patrol car with a passenger, Officer Zack O'Diam. While patrolling the Hilltop property at approximately 4:00 p.m., he observed a silver Buick with its windows down parked in a parking lot with one entrance. (Tr. at 7-8). Orick noticed that the two individuals in the Buick "appeared to be leaned back real far in their seats." (*Id.*). He circled his cruiser around again and reported what he had seen to another police officer, Jack Miniard, who was nearby in a separate cruiser. (*Id.* at 7). Orick then "went back to make contact with the individuals to determine one, if they belonged on the property, if they were visiting because at this point they were not making any movements to leave the car, to go to an apartment, they were just loitering in the parking lot." (*Id.*).

{¶ 4} Miniard and Orick both pulled their cruisers into the parking lot. (*Id.* at 8). As Miniard did so, one occupant of the Buick exited the driver's side and fled on foot toward a nearby apartment. Miniard and O'Diam pursued this person. (*Id.*). Orick began to exit his cruiser to make contact with the Buick's other occupant, who was Thomas. As Orick

did so, Thomas began running south. (*Id.*). Orick followed Thomas in the police cruiser, using the PA system to give him several commands to stop. (Id*.* at 9). After running about three blocks, Thomas stopped and Orick took him into custody. (*Id.* at 9-10). Orick handcuffed Thomas and placed him under arrest for obstructing official business based on his flight. (*Id.* at 10). As he conducted a search incident to arrest, Orick discovered two individually-wrapped baggies of heroin in Thomas' pocket. (*Id.* at 11).

{¶ 5} On cross examination, Orick testified that his purpose in approaching the stopped vehicle was to engage in a consensual encounter to determine whether the occupants of the Buick "belonged on the property or not." (*Id.*). He testified that Miniard pulled in about ten to fifteen feet from the passenger's side of the Buick when the occupant on the driver's side fled on foot. (*Id.* at 12). Orick pulled in about fifteen feet from Miniard's cruiser. (*Id.*).

{¶ 6} In response to questioning from the trial court, Orick stated that the Buick was not blocked in any way. (*Id.*). With regard to his concern about the occupants of the Buick lawfully being on the property, Orick explained: "* * * Due to the GDPM Management with the contract that individuals sign when they reside in GDPM properties that a very thorough contract determining what visitors they're allowed to have, and trespass individuals, and that's the biggest problem that GDPM has is trespassed individuals returning to the properties. And, we have the authority per GDPM management to check on individuals that are either on the trespass list or not on the trespass list." (*Id.* at 13). Orick also testified that no lights, sirens, or audible commands were used or given before the two occupants of the Buick fled. (*Id.*). He stated: "* * * [W]e just pulled into the lot and then the driver immediately bailed from the car and ran leaving

the driver's side door open and Mr. Thomas began to run." (*Id.*).

{¶ 7} One week after the suppression hearing, the trial court ruled from the bench and denied Thomas' motion. (*Id.* at 16-20). Based on Orick's testimony, the trial court found no show of authority and, therefore, no seizure prior to Thomas' flight on foot. The trial court further found that Thomas' flight constituted evasive behavior that provided reasonable suspicion of criminal activity. The trial court reasoned that Thomas' continued flight after Orick ordered him to stop provided probable cause to arrest him for obstructing official business. Finally, the trial court concluded that Thomas was searched incident to a lawful arrest. (*Id.*). The trial court filed a written decision journalizing its oral ruling. (Doc. # 20). Following the ruling, Thomas pled no contest to the charge against him. The trial court accepted the plea. It found him guilty and imposed community-control sanctions. (Doc. # 23).

{¶ 8} On appeal, Thomas limits his argument to the trial court's first finding, namely that he was not seized prior to his flight on foot. Thomas asserts that, prior to his flight, the Buick in which he was sitting was subjected to an unlawful investigatory stop and he unlawfully was seized. (Appellant's brief at 7). In support, Thomas insists that there was a show of authority by the officers because they entered the parking lot in two cruisers "and essentially blocked any avenue of escape." (*Id.* at 8). He argues:

> * * * The vehicle itself was then subject to a *Terry* stop without any
>
> reasonable suspicion of criminal activity. At that point, the driver of the Buick
>
> got out of the vehicle. The driver fled on foot and was pursued by Miniard
>
> and O'Diam. Mr. Thomas stayed in the vehicle. While Mr. Thomas remained
>
> seated in the car, there was a police cruiser (Officer Miniard's cruiser)

pointing directly at where Mr. Thomas was sitting and another police cruiser immediately behind it. Mr. Thomas had just witnessed two officers engage in a foot pursuit of the driver and another officer was getting out of the second police cruiser. From that point forward, Mr. Thomas was the subject of an investigatory detention based on the totality of the circumstances, and the protections of the Fourth Amendment, and Article I, Section 10 of the Ohio Constitution attached. No reasonable person would have felt free to leave at that moment.

Critically, the encounter between Mr. Thomas and Officer Orick was not consensual. Rather, based on the totality of the circumstances, Mr. Thomas was subject to an investigatory detention in the absence of reasonable suspicion of criminal activity. Certainly, upon the driver's flight and subsequent pursuit by the police, no reasonable person or passenger in such a situation would have felt free to leave or felt free to otherwise terminate the encounter. To the contrary, any reasonable person in such a situation would know they are about to be stopped, detained, and questioned by the remaining officer(s) at the scene.

Although Mr. Thomas was not physically seized at the moment the Fourth Amendment attached, he was not free to leave once the driver fled. Mr. Thomas was subject to detention at that point. Certainly Officer Orick was going to detain Mr. Thomas and Mr. Thomas was not free to leave. Yet none of the officers had developed reasonable suspicion that Mr. Thomas was engaged in criminal activity at the time Orick began to exit his car. The

only observation of the police officers that day, based on the testimony, was that two men were sitting in a parked car and leaning back. * * * Orick and O'Diam did not observe Mr. Thomas acting suspiciously and they did not observe any furtive movements. * * *

(Appellant's brief at 8-9).

{¶ 9} In essence, Thomas contends he submitted to a show of authority by police—who acted without articulable suspicion or probable cause—prior to his flight and, therefore, was unlawfully seized when he briefly sat in the car before fleeing. Thomas reasons that his subsequent flight, after this unlawful seizure, is irrelevant and that his ultimate arrest was unlawful due to the initial seizure in the parking lot. (Appellant's reply brief at 5-6).

{¶ 10} We find Thomas' argument to be unpersuasive. The evidence supports the trial court's finding that there was no show of authority by police toward Thomas and, therefore, no seizure prior to his flight. Officer Orick testified that he entered the parking lot with the intent to engage in a consensual encounter to determine whether the occupants of the Buick had permission to be on the property. Orick also testified that the Buick was not blocked in and that no lights, sirens, or commands were used or given before the occupants of the Buick fled on foot. In short, two police cruisers simply pulled into the parking lot and stopped ten to fifteen feet away from the Buick. As they did so, the driver of the Buick fled. As Orick began to exit his cruiser, Thomas also fled. At that point, the police had done no more than attempt to approach Thomas in a public place. This does not violate the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983) (recognizing that "law enforcement officers do not violate

the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions").

{¶ 11} A "seizure" requires either "some application of physical force" or "a show of authority to which the subject yields." *State v. Franklin*, 2d Dist. Montgomery No. 15875, 1997 WL 476693, *2 (Aug. 22, 1997), citing *California v. Hodari B.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Neither of these requirements had been met when Thomas sat in the Buick prior to his flight. *See, e.g.*, *State v. Carter*, 2d Dist. Montgomery No. 19833, 2004-Ohio-454, ¶ 19-20 (recognizing that an officer's act of pulling into a parking lot, stopping behind a defendant's parked car, and approaching to ask questions does not constitute a seizure); *State v. Lopez*, 2d Dist. Greene No. 94-CA-21, 1994 WL 527670, *3 (Sept. 28, 1994) (noting that merely approaching individuals seated in a parked car does not constitute a seizure, particularly when the vehicle is parked in a public parking lot); *Compare State v. Curtis*, 193 Ohio App.3d 121, 2011-Ohio-1277, 951 N.E.2d 131, ¶ 23 (2d Dist.) (finding that the defendant was seized, within the meaning of the Fourth Amendment, when a police officer pulled into a parking lot, blocked the defendant's car, and kept the defendant's identification beyond the point where the officer determined the defendant was not engaged in any criminal activity).

{¶ 12} The only potential factor we see militating in favor of Thomas' argument is the presence of two police cruisers. In *United States v. Mendenhall*, 446 US. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the U.S. Supreme Court cited "the threatening presence of several officers" as a relevant consideration that might indicate a seizure. In

the present case, however, the officers did nothing "threatening" prior to the flight of the Buick's occupants. After considering the totality of the circumstances, we are unpersuaded that a seizure occurred in this case simply because two police cruisers entered the parking lot. The mere presence of multiple officers does not necessarily establish a seizure. Indeed, in *Mendenhall* itself, the Supreme Court found no seizure despite the fact that the defendant initially was confronted by two federal agents and later was searched by a third law-enforcement officer.

{¶ 13} Having rejected Thomas' sole argument, we overrule his assignment of error. The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Dylan G. Smearcheck
Matthew Suellentrop
Hon. Mary Katherine Huffman